**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2016 MSPB 3**

Docket No. DC-1221-15-0102-W-1

**Christine Ann Runstrom,**

**Appellant,**

**v.**

**Department of Veterans Affairs,**

**Agency.**

January 14, 2016

Bobby Devadoss, Esquire, Dallas, Texas, for the appellant.

Christina Knott and Katherine Seto, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## OPINION AND ORDER

¶1 The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in her individual right of action (IRA) appeal. For the reasons discussed below, we GRANT the appellant's petition for review, AFFIRM the initial decision IN PART, REVERSE the initial decision IN PART, and REMAND the appeal for a determination of the appropriate corrective action.

## BACKGROUND

¶2 The appellant is a Learning Resource Officer in Strategic Learning Services (SLS), a division of the Office of Employee Development and Training

(ED&T), within the agency's Veterans Benefits Administration (VBA). Initial Appeal File (IAF), Tab 7 at 5. ED&T also includes a division of Technical Training and Evaluation (TT&E). IAF, Tab 17 at 15. During the events that remain at issue in this appeal, the appellant's supervisor was the Assistant Director of SLS, who in turn reported to the Deputy Director of ED&T. *Id*. at 14.

¶3 During fiscal year (FY) 2012 and FY 2013, the appellant served as Project Manager for SLS's development of "competency models" for various VBA occupations. IAF, Tab 6 at 25, Tab 7 at 9. This project was a major focus of SLS. IAF, Tab 6 at 25, Tab 7 at 9. However, TT&E was responsible for the agency's related competency-based training program. IAF, Tab 19 at 51-52. Among other tasks, TT&E was assigned to develop "curriculum maps," and to "plan, budget, and manage the execution of contracts to support training and training products." *Id*. at 52.

¶4 In late June or early July 2013, the appellant's supervisor informed her that ED&T management was considering reassigning the SLS competency project to TT&E. IAF, Tab 6 at 17. However, at some point later that month, a decision was made to set up a "matrix relationship,"[1] including members of both SLS and TT&E, intended to merge all competency efforts into a single program. IAF, Tab 19 at 51. The appellant avers, and the agency does not dispute, that on July 16, 2013, following a meeting with her supervisor and the Director of TT&E, she was designated Program Manager for the joint competencies project. IAF, Tab 4 at 5, Tab 12 at 12, 41; *see* IAF, Tab 17 at 15. She subsequently received a blanket travel authorization for her work on the joint project, which entailed regular visits to the TT&E office in Orlando, Florida. IAF, Tab 12 at 65-66.

¶5 On or about October 24, 2013, the appellant disclosed to her supervisor what she believed to be violations of Federal Acquisition Regulations (FAR) in

---

[1] The matrix relationship was also referred to as a "matrix organization." IAF, Tab 19 at 51.

the assignment of contract work for the project of "mapping" competencies. IAF, Tab 19 at 35-39, 52. The focus of the disclosures was her belief that TT&E employee S.R., who was acting as the Contracting Officer's Representative (COR), was assigning work improperly on the project to contractor Camber, when another contractor, General Dynamics Information Technology (GDIT), had won the bid for the contract.[2] IAF, Tab 12 at 7-9, 17-22, 43-44, Tab 19 at 30-33, 35-39, 60-62.

¶6    Also on October 24, 2013, or shortly before, the Director of TT&E met with VBA acquisitions personnel to discuss the concerns the appellant had raised regarding the Camber/GDIT issue. IAF, Tab 12 at 20. In an email memorializing the meeting, the Director of TT&E was advised that Camber's involvement was not improper, as it was sharing deliverables completed on a previously awarded contract, but that "we must be certain that all contractors work and charge their time to their awarded contract, with those tasks/deliverables, so that the invoices reflect the correct labor hours worked for that particular contract." *Id*. (emphasis removed). The email noted that it was the COR's responsibility "to ensure that all work is completed and charged according to the terms and conditions of that particular contract." *Id*. Later that day, the appellant's supervisor canceled a business trip that the appellant had previously planned. IAF, Tab 19 at 50-51.[3]

¶7    On October 29, 2013, the appellant's supervisor and the Director of TT&E discussed the competencies project, and the appellant's supervisor called the appellant to share the outcome of their discussion. *Id*. at 51. That afternoon, the

---

[2] The appellant contends that another employee was the officially designated COR, IAF, Tab 12 at 8, but that issue is not material to the outcome of this appeal.

[3] The agency asserts that the cancellation was the result of the furlough of ED&T employees from October 8 to 17, 2013, and that no travel was approved for any ED&T employee that month. IAF, Tab 17 at 17.

appellant sent an email to her supervisor with the subject line "Retaliation." *Id*. at 52-53. The appellant stated that the Director of TT&E had "insisted" that her supervisor remove her as Program Manager, which she took as retaliation for her disclosures of alleged contracting improprieties. *Id*. at 52. She expressed disappointment that her supervisor had failed to protect her from the Director of TT&E and what she described as his "abuse," and had now "acquiesced" in his request to remove her as Program Manager of the competencies project. *Id*. at 53.

¶8  The following day, the appellant's supervisor sent the appellant an email memorializing his discussion with the Director of TT&E. *Id*. at 51-52. He explained that, "**Our matrix organization is not working and should be discontinued. Effective immediately, we will return to the working relationship in place for our two organizations in July.**" *Id*. at 51 (emphasis in original). The appellant's supervisor explained that SLS would continue to be responsible for duties relating to competency models, while TT&E would continue to be responsible for "development of a competency based training system" and other related duties. *Id*. at 51-52. The appellant contends that the discontinuation of the "matrix relationship" relieved her of her duties as Program Manager for the joint competencies project, which she had been assigned on July 16, 2013. *Id*. at 5.

¶9  On November 20, 2013, the appellant's supervisor issued the appellant a performance appraisal for FY 2013, rating her as "Exceptional" in all three critical elements (Program Management, Customer Service, and Communications), but "Fully Successful" on the two noncritical elements (Team Performance and Socio-Economic Goal). IAF, Tab 6 at 20-28. As a result, the appellant received an overall rating of "Excellent." *Id*. at 24. This was a lower rating than her "Outstanding" rating for FY 2012, when she was rated "Exceptional" on all five elements. IAF, Tab 7 at 9-14.

¶10  Subsequently, the appellant filed a complaint with the Office of Special Counsel (OSC), in which she alleged, inter alia, that the agency had relieved her

of her duties as "Program Manager for Competencies" and lowered her performance appraisal in retaliation for her disclosures concerning the Camber/GDIT issue. IAF, Tab 1 at 4. Upon receiving notice that OSC had terminated its investigation, she timely filed this IRA appeal. *Id*. at 1-3. Based on the parties' written submissions, the administrative judge found that the appellant established jurisdiction by making nonfrivolous allegations that she made protected disclosures concerning the Camber/GDIT issue that were a contributing factor in the removal of her Program Manager duties and her lowered performance appraisal. [4] IAF, Tab 15 at 1-5.

¶11      The appellant withdrew her request for a hearing, and the administrative judge issued a decision based on the written record. *Id*. at 6; IAF, Tab 20, Initial Decision (ID) at 1. In her decision, the administrative judge implicitly found that the appellant's disclosures concerning the Camber/GDIT issue were protected under 5 U.S.C. § 2303(b)(8).[5] ID at 5-6. She further found that these disclosures

---

[4] The appellant's disclosures concerning the Camber/GDIT issue were labeled as disclosures (2) and (3), although the distinction between the two is not entirely clear. IAF, Tab 15 at 3-4. In her response to the show cause order on jurisdiction, the appellant described an additional disclosure, which the administrative judge labeled as disclosure (1), concerning the agency's alleged failure to consider awarding the contract work to small businesses, as required by FAR 19.2 and 19.5. IAF, Tab 12 at 4-5, Tab 15 at 2. It is unclear whether the appellant mentioned that disclosure in her correspondence with OSC, or first raised it before the Board. *See Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 12 (2014) (finding that, to satisfy the exhaustion requirement, an appellant must inform OSC of the precise ground of his whistleblower claims), *aff'd*, No. 2014-3103, 2015 WL 8538501 (Fed. Cir. Dec. 11, 2015). In any event, the administrative judge found that the appellant failed to make a nonfrivolous allegation that disclosure (1) was protected, IAF, Tab 15 at 2-3, and the appellant does not contest that finding.

[5] This finding was not clearly stated. The administrative judge initially found that disclosure (2) evidenced what the appellant reasonably believed (albeit incorrectly) to be a violation of law, rule, or regulation. ID at 5. As the appellant observes, this implies that the disclosure was protected under 5 U.S.C. § 2302(b)(8). Petition for Review File, Tab 1 at 7-8. However, the administrative judge did not explicitly state that conclusion, but proceeded to find that the appellant failed to nonfrivolously allege that disclosure (2) evidenced gross mismanagement, gross waste of funds, or an abuse

were a contributing factor in both the appellant's change of duties and her lowered performance appraisal. [6] ID at 8-11. However, she found that the agency established by clear and convincing evidence that it would have taken the same actions in the absence of her whistleblowing activity. ID at 11-17. Accordingly, the administrative judge denied the appellant's request for corrective action. ID at 17. The appellant's petition for review followed. Petition for Review (PFR) File, Tab 1.

## ANALYSIS

¶12    In reviewing the merits of an IRA appeal in which the appellant alleges retaliation for protected disclosures, the Board first considers whether the appellant has established by a preponderance of the evidence that she made protected disclosures under 5 U.S.C. § 2302(b)(8) that were a contributing factor in an agency's personnel action. *Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 10 (2014). Where, as here, the appellant is able to offer such proof, the Board must order corrective action unless the agency can

---

of authority. ID at 6. Next, in discussing disclosure (3), the administrative judge did not state whether the appellant had established by preponderant evidence that the disclosure was protected, but instead reiterated her earlier finding that the appellant had made a nonfrivolous allegation to that effect. *Id*. Nonetheless, the administrative judge went on to find that the appellant made protected "disclosures," that those "disclosures" were a contributing factor in the personnel actions at issue, and that the agency had shown by clear and convincing evidence that it would have taken the same actions absent her "disclosures." ID at 11-17. Thus, the administrative judge appears to have concluded that both disclosures (2) and (3) were in fact protected. We agree with this finding.

[6] In her pleadings below, the appellant provided correspondence with OSC in which she alleged that management took an additional retaliatory action by withholding work assignments beginning in December 2013. IAF, Tab 19 at 15-21, 40-41. The administrative judge found that the appellant failed to show by preponderant evidence that the agency withheld work from her, ID at 7-8, and the appellant does not contest that finding.

establish by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosure. *Id*.; *see* 5 U.S.C. § 1221(e).

¶13    Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e). In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors: the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). "Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

¶14    We agree with the administrative judge that the agency met its burden concerning the appellant's lowered performance appraisal. As noted above, the appellant's overall rating of "Excellent" in FY 2013 was the result of receiving a "Fully Successful" rating in the two noncritical elements, Team Performance and Socio-Economic Goal, when she had received an "Exceptional" rating in those same elements the previous year. IAF, Tab 6 at 23-24, Tab 7 at 8, 14. While the record does not establish clearly what achievements were required to obtain an "Exceptional" rating in Team Performance or Socio-Economic Goal, the appellant's FY 2013 appraisal, which was based on her own self-assessment, lists markedly fewer achievements under those elements than are listed in her FY 2012 appraisal. *Compare* IAF, Tab 6 at 28, *with* IAF, Tab 7 at 12-13. Further, the description of the activities performed in FY 2012 are more detailed and reflect a greater level of involvement in the work performed. For example, in FY 2012,

the appellant reviewed employee survey results "as a source of information about compassion fatigue and how it plays out in the workforce," participated in a recruitment fair for veterans by greeting veterans and identifying potential candidates for employment, and conducted market research to identify three possible locations for a training conference. PFR File, Tab 7 at 12-13. By contrast, in FY 2013, she "drafted reports" and performed other duties while serving on a subcommittee, "assisted with the planning and execution" of an employee appreciation event, and "[c]onducted all meetings when possible within the local DC area." IAF, Tab 6 at 28. Hence, there is considerable evidence to support the agency's action.

¶15    Furthermore, because the appellant's disclosures did not implicate her supervisor (the rating official) or other SLS employees, we find weak evidence of a retaliatory motive on his part. Concerning the treatment of similarly situated employees who were not whistleblowers, the appellant notes that the agency did not provide evidence showing that other employees' ratings were based on self-assessments. PFR File, Tab 1 at 10. However, assuming arguendo that the appellant was singled out for self-assessment, providing her greater control over her performance appraisal would have been more, not less, favorable treatment and thus would not support a finding of retaliation. Considering the record as a whole, we affirm the administrative judge's conclusion that the agency established by clear and convincing evidence that it would have taken the same action absent the appellant's whistleblowing.

¶16    We reach a different conclusion regarding the other personnel action at issue, i.e., the agency's decision to relieve the appellant of her duties as Program Manager for the competencies matrix relationship. In finding that the agency met its burden of proof as to that action, the administrative judge relied on evidence that, as of July 1, 2013, management was considering reassigning the SLS competency model project to TT&E. ID at 14; *see* IAF, Tab 6 at 17. Based on that evidence, the administrative judge concluded that the agency had a "plan" to

reassign that project, which "was well underway" before the appellant made her disclosures. ID at 14. However, the personnel action at issue is the appellant's removal as Program Manager of the matrix relationship, a role she was assigned in mid-July 2013. IAF, Tab 4 at 5, Tab 12 at 12. The October 30, 2013 email from the appellant's supervisor indicates that the "matrix relationship" between SLS and TT&E was being terminated pursuant to his discussion with the Director of TT&E the previous day, after the appellant had already made her disclosures concerning the Camber/GDIT issue. IAF, Tab 19 at 51-52. Thus, the record does not support the administrative judge's finding that the contested action already was underway when the appellant made her disclosures. Moreover, the only evidence explaining the agency's decision is the vague statement by the appellant's supervisor that the matrix relationship "is not working and should be discontinued." *Id.* at 51. The agency failed to provide declarations or sworn statements from either the appellant's supervisor or the Director of TT&E, who were the individuals that made the decision to terminate the matrix relationship.

¶17     There is little evidence of retaliatory motive on the part of the appellant's supervisor, and the Director of ED&T was not informed of the appellant's disclosures until November 1, 2013, after the decision to end the joint project between SLS and TT&E already had been made. *Id*. at 35. The Director of TT&E, as the supervisor of S.R., the employee the appellant accused of wrongdoing, potentially had a motive to retaliate against the appellant. *See Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 29 (2015) (finding that agency officials had a possible motive to retaliate based on the appellant's disclosure that an individual within their chain of command was harassing her, which reflected on the officials' capacities as managers and employees); *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶¶ 32-33 (2013) (finding that disclosures of subordinate employees' wrongdoing created a motive to retaliate on the part of their first- and second-level supervisors). However, in this case, the documentary evidence, including S.R.'s declaration sworn under penalty

of perjury, reveals that agency officials looked into the appellant's allegations and, within a few days of the appellant's disclosure, found no wrongdoing by S.R. IAF, Tab 12 at 20-27, Tab 19 at 30-38, 60-62. Therefore, we find that the appellant's disclosure did not reflect negatively on the Director of TT&E. Further, there is no evidence that either S.R. or the Director of TT&E suffered any ramifications as a result of the appellant's disclosure.

¶18        Finally, the record includes no evidence that there were any employees similarly situated to the appellant, regardless of their whistleblower status. The appellant was the sole Program Manager for the matrix relationship, which was discontinued. Thus, the third *Carr* factor is not a significant factor for analysis in this case.

¶19        Ultimately, however, because the agency failed to present evidence to explain its reasons for discontinuing the matrix relationship, which resulted in the removal of the appellant's duties as Program Manager of that project, we find that it has failed to prove by clear and convincing evidence that it would have removed those duties in the absence of her whistleblowing. Because the appellant has established by preponderant evidence that her protected disclosures were a contributing factor in the removal of her Program Manager duties, and the agency has not established by clear and convincing evidence that it would have taken that action in the absence of her disclosures, the Board is required to order appropriate corrective action. 5 U.S.C. § 1221(e). In addition to attorney fees and consequential and compensatory damages, corrective action may include status quo ante relief including: cancellation of the retaliatory personnel action; the appellant's reinstatement to her former position or to another substantially equivalent, as appropriate; back pay; interest on back pay; and other employment benefits that she would have received had the action not occurred. 5 U.S.C. § 1221(g)(1); *Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 25 (2010).

¶20        It is unclear from the existing record what, if any, relief may be available in this case. For example, it appears that the matrix relationship that gave rise to

the appellant's Program Manager duties no longer exists. IAF, Tab 19 at 51. Therefore, there is a question as to what duties, if any, to restore to the appellant to ensure that she receives the career opportunities she claims she lost when the relationship ended. *Id.* at 53-54; *see Ingram v. Department of the Army*, 116 M.S.P.R. 525, ¶¶ 14, 19 (2011) (ordering an agency to restore an appellant's team assignment after he proved that his transfer off the team was retaliatory). In addition, it appears that the parties have not yet presented evidence regarding compensatory and consequential damages. Accordingly, the record is not developed on the damages issues, and we remand the case to the regional office for a determination of an appropriate corrective action.

## ORDER

The case is remanded to the regional office for further adjudication consistent with this Opinion and Order.

FOR THE BOARD:

_____
William D. Spencer
Clerk of the Board
Washington, D.C.